RECEIVED
IN LAKE CHARLES, LA.
AUG - 6 2013
TONY R. MOORE, CLERK
BY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| SCOTT J. PIAS | : | DOCKET NO. 2:13-CV-00182-PM-KK |
| VS. | : | JUDGE MINALDI |
| CONTINENTAL CASUALTY INSURANCE COMPANY | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the court is a Motion for Judgment on the Pleadings [Doc. 9], filed by the defendant, Continental Casualty Insurance Company ("Continental"). The plaintiff, Scott Pias, filed an opposition [Doc. 11], and Continental filed a reply [Doc. 12]. For the foregoing reasons, Continental's Motion for Judgment on the Pleadings is GRANTED.

## FACTUAL BACKGROUND

This case arises out of an insurance coverage dispute between Pias and his insurer, Continental, for coverage under Pias's professional liability policy stemming from an attorney's fees dispute between Pias and a former client.[1] Pias originally filed suit in the Fourteenth Judicial Court of Calcasieu Parish in December 2012, and Continental then timely removed to this court on the basis of diversity jurisdiction, 28 U.S.C. § 1332.[2]

---

[1] *See* Pl.'s Compl., [Doc. 1-5].

[2] Not. of Removal, [Doc. 1].

1

## I. The Policy Terms

As background, Continental issued Lawyers Professional Liability Policy No. 169771750 to Pias for the policy period of May 28, 2012 to May 28, 2013 ("the Policy").[3] Subject to all of its terms and conditions, the Policy's Insuring Agreement provides that Continental will pay on behalf of Pias:

> all sums in excess of the deductible that [Pias] shall become legally obligated to pay as **damages** and **claim expenses** because of a claim that is both first made against [Pias] and reported in writing to [Continental] during the policy period **by reason of an act or omission in the performance of legal services** by [Pias] or by any person for whom [Pias] is legally liable . . . .[4]

The Policy also provides that "[Continental] shall have the right and duty to **defend** in [Pias's] name and on [Pias's] behalf **a claim covered by this policy** even if any of the allegations of the claim are groundless, false or fraudulent."[5]

The Policy defines "damages" as "judgments, awards and settlements (including prejudgment interest), provided any settlements negotiated with the assistance and approval of [Continental]," but also provides in relevant part that:

> Damages do not include:
>
> A. **legal fees**, costs and expenses paid or incurred or charged by [Pias], no matter whether claimed as restitution of specific funds, forfeiture, financial loss, set-off or otherwise, **and injuries that are a consequence of any of the foregoing**;
>
> B. civil or criminal fines, **sanctions**, penalties or forfeitures, **whether pursuant to law, statute, regulation or court rule**, including but not limited to awards under 18 U.S.C. §1961, et. seq., Federal Rules of Civil Procedure 11 or 28 U.S.C. §1927 and state statutes, regulations, rules or law so providing, and injuries that are a consequence of any of the foregoing;

---

[3] *See generally* "The Policy," Ex. A to Def.'s Mot. for J. on the Pleadings, [Doc. 9-2].

[4] *Id.* at p. 5 (emphasis added).

[5] *Id.* (emphasis added).

\*\*\*

    E.  injunctive or declaratory relief.[6]

The Policy defines a "claim" as "a demand, including the service of suit or the institution of any alternative dispute resolution proceeding, received by [Pias] for money or services **arising out of an act or omission, including personal injury, in the rendering of or failure to render legal services.**"[7] The Policy defines the term "legal services" in relevant part to mean "those services, including pro bono services, **performed by [Pias] for others as a lawyer**, arbitrator, mediator, title agent or other neutral fact finder or as a notary public" or "as an administrator, conservator, receiver, executor, guardian, trustee or in any other fiduciary capacity and any investment advice given in connection with such services."[8]

## II. The Underlying Worker's Compensation Action

Turning to the events that gave rise to this coverage dispute, Pias previously represented a client, Jo Ann Lopez, in a workers' compensation matter before the Louisiana Office of Workers' Compensation, District 03. The matter settled on May 15, 2012, and on that same day, the workers' compensation court signed an order approving the settlement.[9] On or about May 24, 2012, Pias received two checks from the workers' compensation defense counsel, one for $95,000 made payable to Pias and Lopez, and one for $40,607 made payable to Lopez as the initial payment for the Medicare Set Aside Account. Then, on June 16, 2012, Pias provided Lopez with a "Settlement Statement," showing that he was charging her $86,221.60 in attorney's

---

[6] *Id.* at p. 8 (emphasis added).

[7] *Id.* at p. 7 (emphasis added).

[8] *Id.* at p. 9 (emphasis added).

[9] The settlement called for payment of (1) $95,000 in indemnity benefits, (2) $40,616 as seed money for a self-administered Medicare Set Aside Account for Lopez, and (3) an annual payment of $18,915 for up to 25 years, should Lopez be living during that time, beginning on March 28, 2013, to be paid into the Medicare Set Aside Account.

fees. Arguing that an $86,000 bill was *not* was she signed up for, Lopez retained new counsel to represent her in obtaining a return of the attorney's fees charged by Pias.

### III. The Fee Dispute

On July 31, 2012, Lopez's new counsel filed a "Motion for Return of Funds Held as Attorney Fees" with the Office of Workers' Compensation.[10] In the motion, Lopez, through her new attorney, alleged that "[i]f Lopez had been told in advance of signing the Joint Petition to Compromise that attorney fees in the amount of $86,221.60 would be charged, she would not have settled her case and she would not have signed the Joint Petition."[11] Additionally, Lopez alleged that "[i]nsomuch as Mr. Pias failed to file an Application for Approval of Attorney [F]ees in accordance with La. R.S. 2[3]:1143, he is not entitled to any fee whatsoever and the Claimant [Lopez] respectfully requests that in accordance with the law all funds held by Mr. Pias be paid to Lopez."[12] Continuing, Lopez asserted that "Mr. Pias should be sanctioned in an amount to be determined by the Court as well as taxed with all costs and reasonable attorney's fees incurred for bringing this motion."[13] Lopez requested that the workers' compensation court "grant the Motion and order the return of all attorney fees withheld by Scott Pias which amounts to $86,221.60 as well as levy sanctions, all costs and attorney's fees for bringing of this motion."[14]

Pias retained counsel to represent him in the fee dispute matter. On December 5, 2012, the presiding judge found in favor of Lopez, issuing transcribed Oral Reasons for Judgment:

---

[10] *See* "Fee Dispute Motion," Ex. B to Def.'s Mot. for J. on the Pleadings, [Doc. 8-3].

[11] *Id.* at ¶ 7.

[12] *Id.* at ¶ 9.

[13] *Id.* at ¶ 13.

[14] *Id.*

> Pursuant to LA R.S. 23:1141, the maximum fees of an attorney who renders services for an employee shall not exceed 20 percent of the amount recovered. Since no application for approval of the fee was submitted to the court, the entire fee of $86,221.60 must be returned to the claimant by Mr. Pias. The Court hereby denies sanctions. For these reasons, judgment is rendered accordingly.[15]

The workers' compensation court also issued a written Judgment:

> After reviewing the record, considering the law and the evidence, the court grants the claimant's Motion for Return of Funds Held as Attorney Fees.
>
> **IT IS ORDERED** that because no application for approval of the attorney's fee was submitted to the court, the entire fee collected by Attorney Scott Pias in the amount of $86,221.60, plus legal interest from the date of judicial demand until paid, must be returned to the claimant, Jo Ann Lopez.
>
> **IT IS FURTHER ORDERED** that the request for sanctions is denied.[16]

### IV. The Coverage Dispute

Pias subsequently requested that Continental defend and indemnify him in the workers' compensation fee dispute matter. When Continental denied coverage, citing the terms of the Policy, Pias filed this suit.

Continental now moves for judgment on the pleadings, arguing that: (1) the amounts Pias seeks do not arise out of a covered "claim" under the terms of the Policy, because the costs were not incurred as a result of an "act or omission in the performance of legal services;" and, in the alternative, (2) the amounts Pias seeks are not covered "damages" under the terms of the Policy. Thus, because these amounts are not covered under the Policy, it follows that Continental was not obligated to defend and indemnify Pias in the underlying fee dispute.

---

[15] "Oral Reasons for Judgment," Ex. C to Def.'s Mot. for J. on the Pleadings, [Doc. 8-4].

[16] "Judgment," Ex. D to Def.'s Mot. for J. on the Pleadings. [Doc. 8-5].

## MOTION FOR JUDGMENT ON THE PLEADINGS STANDARD

After a party has answered a complaint, the proper mechanism for removing a claim from the Court's consideration is a judgment on the pleadings under Federal Rule of Civil Procedure 12(c). The court evaluates motions for judgment on the pleadings in the same manner in which it evaluates Rule 12(b)(6) motions to dismiss. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). In ruling on a Rule 12(b)(6) or Rule 12(c) motion, the court accepts the plaintiff's factual allegations as true and construes all reasonable inferences in a light most favorable to the plaintiff or nonmoving party. *Gogreve v. Downtown Develop. Dist.*, 426 F. Supp.2d 383, 388 (E.D. La. 2006). Plaintiffs must plead enough facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level...on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965. A court should only grant a motion for judgment on the pleadings when the plaintiff would not be entitled to relief under any set of facts the plaintiff could prove consistent with the complaint. *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004).

Additionally, although a court is generally relegated to the pleadings in deciding a motion to dismiss or motion for judgment on the pleadings, the court may also consider documents attached to the complaint and the motion to dismiss which the complaint refers to and are central to the plaintiff's claims (in this case, the policy and workers' compensation court documents). *Lone Star Fund V (U.S.), LP v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 – 99 (5th Cir. 2000)).

## LAW AND ANALYSIS

As an initial note, because jurisdiction is based on diversity, Louisiana law applies to the substantive issues before the court. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938). Accordingly, the court must rely on Louisiana civil codes and statutes, along with Louisiana jurisprudence, doctrine, conventional usages, and equity, in making its decision. *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 546 (5th Cir. 2004). To make an 'Erie guess' on an issue of Louisiana law, the Court must "employ the appropriate Louisiana methodology" to decide the issue the way that it believes the Supreme Court of Louisiana would decide it. *Id.* (quoting *Lake Charles Diesel, Inc. v. Gen. Motors Corp.,* 328 F.3d 192, 197 (5th Cir.2003)).

Insurance policies like the one in this case are subject to the rules of contract construction found in the Louisiana Civil Code. *Cadwallader v. Allstate Ins. Co.,* 2002-1637 (La. 6/27/03); 848 So. 2d 577, 580. When interpreting an insurance contract, the court must discern the parties' common intent. *Louisiana Guar. Ass'n. v. Interstate Fire & Cas. Co.,* 93-0911 (La. 1/14/94); 630 So. 2d 759, 763; *see also* La. Civ. Code art. 2045. When the terms of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the intent of the parties. La. Civ. Code art. 2046. "If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written. Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms." *Cadwallader,* 848 So. 2d at 580 (citations omitted). If, conversely, the terms of the contract are ambiguous, the relevant unclear provisions are generally construed against the insurer, in favor

of coverage. *Sims v. Mulhearn Funeral Home, Inc.*, 2007-0054 (La. 5/22/07); 956 So. 2d 583, 589–90.

The terms of the Policy provide that Continental will provide coverage for costs Pias is legally obligated to pay as "damages" or "claim expenses" arising out of an act or omission in the performance of "legal services."[17] Continental argues that, whether cast as damages or claims, the terms of the Policy clearly preclude coverage for the amounts Pias seeks, which further indicates it did not owe Pias a duty to defend or indemnify him in the workers' compensation fee dispute. The undersigned will address each argument in turn.

### I. The costs associated with the fee dispute between Lopez and Pias do not fall within the Policy's definition of a "claim" under the terms of the Policy because Pias did not incur the costs by "act or omission in the performance of legal services"

Continental argues that the costs Pias seeks are not covered by the clear terms of the Policy because he did not incur them while performing legal services for a client. Citing to the relevant Policy provisions, Continental notes that a "claim" is defined as "a demand, including the service of suit or the institution of any alternative dispute resolution proceeding, received by [Pias] for money or services arising out of an act or omission, including personal injury, in the rendering of or failure to render legal services,"[18] and that "legal services" are further defined as services "for others as a lawyer, arbitrator, mediator, title agent or other neutral fact finder or as a notary public" or "as an administrator, conservator, receiver, executor, guardian, trustee or in any other fiduciary capacity and any investment advice given in connection with such services."[19]

---

[17] *Id.* at p. 5.

[18] *Id.* at p. 7.

[19] *Id.* at p. 9.

Thus, because this was nothing more than a fee dispute between an attorney and a client, the claim falls outside the ambit of costs associated with the performance of legal services.

Finding little in the way of directly relevant case law in this circuit or Louisiana, Continental points the court toward several other state court decisions which construed identical or nearly identical policy language.[20] In these cases, the courts unanimously found that a fee dispute would not fall under a legal malpractice insurance policy's coverage because it did not involve a claim arising from an "act or omission in the performance of legal services." For example, in *Clermont v. Continental Cas. Co.*, 778 F.Supp. 2d 133 (D. Mass 2011), the District of Massachusetts addressed whether a contingency fee dispute between an attorney and his former law firm would be covered under a legal malpractice insurance policy with provisions identical to those found in the case at bar. *Id.* at 139. The court held that the inquiry ultimately turned on whether the act or omission involved "specialized knowledge and skill that is acquired through rigorous intellectual training." *Id.* (citing *Reliance Nat'l Ins. Co. v. Sears, Roebuck and Co.*, 792 N.E.2d 145, 147 (Mass. App. Ct. 2003). While the plaintiff attempted to argue that the fee dispute, at least in part, involved "challenges [to his] litigation strategy" (arguably bringing it within the ambit of legal services) the court rejected this argument, noting that at its core, the underlying action involved a "violation of a fee-sharing arrangement with a former employer, which is part of 'the billing function of a lawyer . . . not a professional service.'" *Id.* (citing *Reliance*, 792 N.E.2d at 148).

---

[20] This is unsurprising, based on the fact Continental was a named party in many of these cases.

Surveying the other cases cited by Continental, they come to similar results: a fee dispute does not constitute "legal services,"[21] and a plaintiff's attempt to cloak a run-of-the-mill fee dispute in the trappings some flavor of tort claim cannot change this ultimate conclusion.[22]

In Pias's opposition brief, like the plaintiffs in the cases *supra*, he essentially argues that Lopez's allegations against him in the fee dispute matter also included the fact that he had negligently failed to keep Lopez informed during her workers' compensation case and failed to seek court approval of his attorney's fees, indicating that the fee dispute stemmed at least in part from tortious actions he engaged in while providing legal services. Thus, in order for coverage to attach, Pias must make the awkward argument that this was not simply a run-of-the mill legal fees dispute – Pias *acted negligently* in failing to keep his client informed, in contravention of La. Rev. Stat. ann. 23:1143. Further, Pias argues that if this were simply a fee dispute, then the workers' compensation court judgment would have mentioned Rule 1.5 of the Rules of Professional Conduct, which addresses attorneys' fees. Accordingly, Pias argues that, at the very least, Continental had a duty to defend him against these claims.

Ultimately, Pias's arguments are unavailing. No matter what garb he may attempt to disguise this fee dispute in, it is clear, based on the cited case law and the clear terms of the policy, that this was a straightforward fee dispute clearly not contemplated under the "legal

---

[21] *See Continental Cas. Co. v. Donald T. Bertucci*, 399 Ill.App.3d 775, 787 (Ill. App. Ct. 2010) (finding that a claim for legal fees concerned "ordinary, non-legal services" and that a contrary holding "would expand the insurance coverage beyond what was reasonably contemplated by the parties at the time of contracting"); *see also Gregg & Valby, L.L.P. v. Great Am. Ins. Co.*, 316 F. Supp. 2d 505, 513 (S.D. Tex. 2004) (finding that "[the insured]'s billing and fee-setting practices are not 'professional services'" because "nothing suggests that billing or fee-setting require specialized legal skill and knowledge, nor are they acts particular to the legal profession."); *Tana v. Prof. Prototype I Ins. Co.*, 47 Cal. App. 4th 1612, 1619 (Cal. Ct. App. 1996) (holding that attorney's interpleader action to protect settlement funds was in "no one's interest but his own" and could not "be construed as the rendering of services in a 'lawyer-client relationship'"),

[22] *See Bertucci*, 399 Ill.App.3d at 783 (rejecting the plaintiff's characterization of a fee dispute as "legal services" because the dispute was triggered by an error or omission while representing a client and noting that "if a party is requesting return of fees," it is immaterial what the actual theory of recovery is") (internal citation omitted); *Continental Cas. Co. v. Brady*, 127 Idaho 830, 833 (1995) (construing similar policy language and noting that "even allegations of professional negligence would be excluded if they were aimed at recovery of fees").

services" Policy definition. As such, it does not fall under the definition of a "claim" under the Policy.

Pias next argues that, even if the fee dispute does not constitute a covered claim under the policy, Continental still has a duty to defend because "an insurer's duty to defend is much broader in scope than the insurer's duty to provide coverage." He cites Section I.B of the Policy, which provides that Continental "shall have the right and duty to defend in [Pias's] name and on [Pias's] behalf a claim covered by this policy even if any of the allegations of the claim are groundless, false or fraudulent."[23] In this instance, he apparently argues that a "claim covered by this policy" does not exclusively mean a claim arising out of performance of legal services, but instead means *any* "demand for money" (which, purportedly, would include the Lopez fee dispute).

Turning to the relevant law, "[u]nder Louisiana law, an insurer's duty to defend suits brought against an insured 'is broader than [its] duty to indemnify' the insured." *Lamar Adver. Co. v. Cont'l Cas. Co.*, 396 F.3d 654, 660 (5th Cir.2005) (citations omitted). Pursuant to the "eight corners rule," an insurer must look to the four corners of the petition and the four corners of the policy to determine whether it has a duty to defend. *Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 872 (5th Cir.2009); *Steptore v. Masco Constr. Co., Inc.*, 643 So.2d 1213 (La.1994). Construing the petition liberally, "[i]f there are any facts in the complaint which, if taken as true, support a claim for which coverage is not unambiguously excluded, the insurer must defend the insured." *Lamar*, 396 F.3d at 660 (quoting *Complaint of Stone Petroleum Corp.*, 961 F.2d 90, 91 (5th Cir.1992)). Importantly, however, an insurer's duty to defend is not triggered where "the pleadings . . . do not reveal a possibility of liability [because] there is not a

---

[23] "The Policy" at p. 5.

claim that would be covered by [the] policy." *See Elliott v. Cont'l Cas. Co.*, 949 So. 2d 1247, 1252 (La. 2007).

In this instance, Continental's duty to defend (or its narrower duty to indemnify) simply has not been triggered. The Policy provisions clearly state that the duty to defend will be activated by a "claim covered by the Policy." As the court has found that the fee dispute does not fall under a "claim covered by the Policy," no defense or indemnification is owed.

As a final effort, Pias argues that Exclusion A of the Policy indicates that Continental agreed to provide him with a defense. The relevant portion of the Policy provides that:

This Policy does not apply:

A. Intentional Acts

To any claim based on or arising out of any dishonest, fraudulent, criminal, malicious act or omission or intentional wrongdoing by an Insured except that:

\*\*\*

2. The Company shall provide the Insured with a defense of such claim unless or until the dishonest, fraudulent, criminal, malicious act or omission or intentional wrongdoing has been determined by any trial verdict, court ruling ...[24]

Continental correctly argues, however, that when the policy otherwise does not provide coverage, " an exclusion cannot create coverage that would not otherwise exist under a policy." *Columbia Cas. Co. v. Georgia & Florida RailNet, Inc.*, 542 F.3d 106, 112 (5th Cir. 2008) (citing *United Nat'l Ins. Co. v. Hydro Tank, Inc.*, 497 F.3d 445, 452-53 (5th Cir.2007). Accordingly, this argument is also unavailing.

II. **The costs associated with the fee dispute between Lopez and Pias do not fall within the Policy's definition of covered "damages"**

---

[24] *Id.* at p. 10.

Continental also argues, without opposition from Pias, that the fee dispute "is nothing more than a fee dispute plain and simple between Pias and his former client, Lopez, over the $86,221.60 that Pias acknowledges he kept as his attorney's fees for representing her in the Worker's Compensation Action," which, based on the terms of the Policy, would not fall under the Policy's definition of "damages." As noted by Continental, the Policy's definition of damages "do[es] not include . . . legal fees . . . paid or incurred or charged by [Pias] no matter whether claimed as restitution of specific funds, forfeiture, financial loss, set-off or otherwise, and injuries that are a consequence of any of the foregoing."[25]

Once again, because Louisiana courts have not addressed this specific issue, Continental references the same core set of state court cases mentioned *supra*. For example, in *Clermont* , after the court found that coverage would not attach to a fee dispute because it was not a "claim" arising out of "legal services," the court assessed whether the a fee dispute could instead constitute covered "damages" under the Policy (as with the definition of a "claim," the *Clermont* policy definition of "damages was identical to the definition at issue in this case). *Id.* at 135. The court succinctly surveyed decisions from several other courts, who had interpreted similar "damages" language to preclude coverage :

> [T]he defendant relies on three state court cases [to show nonoverage]. *See Continental Cas. Co. v. Donald T. Bertucci, Ltd.*, 399 Ill.App.3d 775, 339 Ill.Dec. 358, 926 N.E.2d 833, 844 (2010) (policy did not cover suit by client against insured for taking excessive fee in breach of fee agreement where damages provision excluded, *inter alia,* "legal fees, costs and expenses paid or incurred or charged by the Insured, no matter whether claimed as restitution of specific funds, forfeiture, financial loss, set-off or otherwise, and injuries that are a consequence of any of the foregoing"); *Tana v. Prof. Prototype I Ins. Co.,* 47 Cal.App.4th 1612, 55 Cal.Rptr.2d 160 (Cal.Ct.App.1996) (policy did not cover suit by client against insured attorney for retaining excessive amount of attorney's fees where damages provision excluded, *inter alia,* "legal fees, costs, and expenses"); *Continental Casualty Co. v. Brady,* 127 Idaho 830,

---
[25] *Id.* at p. 8.

> 907 P.2d 807, 811 (1995) (policy did not cover suit by client against insured for taking unreasonably high fee in breach of fee agreement where damages provision excluded, *inter alia,* "any fine, penalty, or claim for return of fees").

*Id.* at 141. Finding the cases cited by the defendant insurance company persuasive, and further agreeing that the damages definition within the policy was unambiguous, the court found that the underlying action "is a fee dispute and does not allege 'damages' within the meaning of the policy." *Id.* (citing *Donald T. Bertucci, Ltd.,* 339 Ill. App.3d at 844).

Against this backdrop of case law, and in light of the similarly clear definition of "damages" within the Policy, the undersigned finds that the fee dispute between Lopez and Pias clearly cannot constitute covered damages under the policy. Indeed, Pias does not provide any argument on how these costs could be considered covered damages based on the terms of the Policy. In the fee dispute, Lopez simply asked for the return of Pias's attorney's fees, based on the fact that Pias did not file an attorney's fee approval application with the workers' compensation court. Leapfrogging off of this conclusion, Lopez's request that the workers' compensation court impose costs and attorney's fees as a result of filing the fee dispute motion similarly would not be covered damages under the terms of the Policy, as they were "injuries that are a consequence of" the return of fees sought by Lopez.[26] Finally, Lopez's request that the workers' compensation court impose sanctions on Pias are also not covered, as they constitute "sanctions . . . whether pursuant to law, statute, regulation or court rule."[27]

---

[26] *Id.*

[27] *Id.*

## CONCLUSION

In conclusion, because the costs incurred by Pias in the fee dispute matter are clearly not covered "damages" or a "claim" under the Policy, Continental did not owe a duty to defend or indemnify Pias in the Lopez fee dispute matter, and thus Continental's Motion for Judgment on the Pleadings must be granted.

Lake Charles, Louisiana, this __3__ day of __August__ 2013.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE